Kenneth MORGAN, Appellant (Plaintiff below);

v.

UNION PACIFIC RAILROAD COMPANY, a corporation, Appellee (Defendant below).

No. 2897.

Supreme Court of Wyoming.
Nov. 24, 1959.

5. 36 Am.Jur. Mechanics' Liens § 3; 57 C.J.S. Mechanics' Liens § 1.

Carroll & Cole, Cheyenne, for appellant.

John U. Loomis and Frederick G. Loomis, of Loomis, Lazear & Wilson, Cheyenne, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action brought by Kenneth Morgan against the Union Pacific Railroad Company in which the plaintiff alleged that he delivered a vacuum-type, cinder removal machine to the defendant upon the agreement that defendant would make trial of the same, would return the same if unsatisfactory to plaintiff and, in case of failure to make such return, would pay plaintiff the sum of $2,750; that a reasonable time elapsed while the machine was in the possession of the defendant but the machine was not returned; and that he, accordingly, asked judgment from the defendant in the sum of $2,750.

The defendant answered, admitting that the machine was delivered to it; that the machine did not prove successful; that the plaintiff did not ask for the return thereof; and that defendant advised plaintiff that the machine would not subserve the purposes for which it was delivered. Defendant also alleged that the contract was within the statute of frauds.

The case was tried to the court without a jury and, on September 25, 1958, judgment was rendered in favor of the defendant and dismissing the action. From that judgment the plaintiff has appealed to this court. The parties will be mentioned herein as in the case below.

The only witnesses in the case were the plaintiff and John W. Godfrey, division engineer of the railroad company, the latter being called for cross-examination.

It appears herein that the plaintiff had a newly-patented machine called "street

cleaner". He believed that it might be use-able by the railroad company for picking up cinders along the defendant's tracks. He delivered one of the machines at the shops of defendant at Laramie, Wyoming, and put the machine in charge of Cal Curtis, foreman on the maintenance of way of the defendant. Plaintiff testified as follows:

"Well, I talked to Mr. Cal Curtis upon delivery of the machine that they would take this machine and try it and if it proved successful to them that they would agree to pay the sum of $2,750 for this machine."

The machine was tested by the defendant in the fall of 1951 at Laramie, Wyoming. It did not prove to be successful for the pur-poses of defendant and some changes were made in the machine by the defendant at its expense. Other tests were made there-after, particularly in the spring or summer of 1955 at Borie, and Mr. Godfrey at that time, as he testified, told the plaintiff that the machine was not successful and re-ferred him to Mr. E. H. Bailey, the general manager of the defendant. The plaintiff thereupon wrote to Mr. Bailey on July 22, 1956. Omitting the address and signature, the letter is as follows:

"Dear Mr. Bailey:

"I should like to make an appoint-ment to meet with you on your next visit to Laramie or Cheyenne in re-gard to my cinder machine.

"As you will recall, I discussed this machine with you some years ago. I was interested in the sale or lease of it to your company. The selling price quoted you on that occasion, i. e. $2750.00, has not changed.

"You referred me to the Division Engi-neer, and as a result, his department took my machine that it might be tested and used. During the past four years it has remained there where various tests have been made.

"In a recent conversation with Mr. Godfrey, Division Engineer, he stated that he is well pleased with the per-formance of the machine. It is at his suggestion that I am now writing you.

"I am well aware of your tremendous responsibility and realize how limited your time is. I sincerely appreciate any time you can give me, and I shall be happy to meet with you at any hour and date most convenient to you."

Mr. Bailey answered the letter on Decem-ber 28, 1956, stating as follows:

"Dear Mr. Morgan:

"With reference to your letter of July 22nd and various discussions between you and our Maintenance of Way Of-ficers in connection with your cinder removal machine.

"This matter has had complete review by our Chief Engineer, as well as our District Engineer and Division Engi-neer J. W. Godfrey. It is the con-sensus of opinion that this machine is not large enough to accomplish the re-moval of the volume of cinders in-volved.

"I feel that we have cooperated close-ly with you in giving this machine a fair trial and since, as indicated above, it will not satisfactorily serve our pur-pose, I am instructing Division Engi-neer Godfrey, who is receiving copy of this letter, to return the machine to you."

In answer to that letter, the plaintiff wrote Mr. Bailey as follows:

"Dear Mr. Bailey:

"Thank you for your letter of Decem-ber 28th in regard to my cinder ma-chine.

"While I am naturally disappointed to learn you are unable to use my ma-chine, particularly in view of the con-siderable time you have had it and the extensive tests which have been made with it, I am sincerely grateful to you and your employees for the time and consideration you have given my machine, and for your kindness to me.

"Since I do hope to sell this machine elsewhere, I shall be happy to have

Mr. Godfrey return it to me, and, of course, expect to have it returned in the same condition it was given you. I am sure that if you, or any of your employees have seen this machine recently, you would scarcely recognize it as the same machine you received from me. It had just been completed a short time prior to your taking it and had been newly painted and was in excellent mechanical condition. From the appearance of the machine now, it would, of course, have little sale appeal.

"I know you are as anxious as I to close your files on this matter and feel confident you will handle the return of this machine to our mutual satisfaction.

"Thank you again for your kindness and consideration."

Some of the detailed testimony, particularly on the part of Mr. Godfrey, will be mentioned hereafter in connection with the specific contentions made herein by counsel for the plaintiff.

■ 1. It is the contention on the part of the plaintiff that when the defendant railroad company made changes in the machine they constituted an acceptance thereof. Plaintiff testified that so far as he recollected the railroad company did not ask for his approval of the changes, but that he saw the machine after the modifications were made. He did not testify that he then made any objections. Mr. Godfrey, the division engineer as above mentioned, stated that after the tests at Laramie certain deficiencies in the machine were noted. In connection with the modifications, he testified that the tests which were made were not satisfactory, that the tests at Laramie were made while Mr. Morgan was present, that certain deficiencies were noted at that time and explained to Mr. Morgan, and that the equipment would not do the required job. He testified further:

"Shortly after the initial test Mr. Morgan contacted me at Cheyenne and we had a brief conversation relative to the machine and I explained that the ma-

chine, while it would pick up cinders, there was a difficulty involving the discharge of the cinders in that they could not be collected because of the blast of air that came from the discharge spout and it was—we were not able to retain the cinders in a truck bed. Mr. Morgan indicated at that time that he had expended practically all of his funds in the development of the machine and that he would appreciate the railroad attempting to modify the machine so that it could be made useful to our company, and in effect gave his approval to the modification which involved the changing of a spout, the discharge spout, in an effort to allow the machine to discharge the cinders into a truck."

In view of the foregoing testimony, the court was fully justified in finding contrary to the contention heretofore made on the part of the plaintiff. Even if it could be said that the testimony of the plaintiff indicated that these modifications were made without his consent, the trial court was not bound to accept that testimony but was entitled to accept the testimony of Mr. Godfrey.

■ 2. Counsel for plaintiff say that the railroad company rejected the machine on inadequate grounds. We are somewhat at a loss to know on what this contention is based. Plaintiff himself did not produce any evidence of the workability of the machine for the purpose of the railroad company. The only evidence on that point comes from the agent of the railroad company. Mr. Bailey, in the letter heretofore set out, said that "It is the consensus of opinion that this machine is not large enough to accomplish the removal of the volume of cinders involved" and that it would not satisfactorily serve the railroad company's purpose. There is no evidence to contradict that. Mr. Godfrey, in addition to the testimony heretofore set forth, testified, after mentioning the tests at Borie in 1955:

"We were still unable to develop that the machine could be utilized for our

purposes. The machine was first tried at Borie and the initial difficulty was that in pulling it by truck the machine was moved at such a speed, even at the slowest speed of the truck that we couldn't pick up the loose cinders which had collected through draft and on either side of the rail. We were concerned about the operation of the machine and we used it only on a side track where we could protect it properly. We did not get it out on the main line track when it was on rubber tires because it was not mobile enough to remove from the track quickly in the event a train should approach, and we found that by pulling the machine with a truck, as I say, it would move so rapidly that it would not do the job of cleaning, and by the way of explanation, the spout would be operated at one side of the rail and then it would be necessary to make a trip down to the other side of the same rail and then repeat that process on the opposite rail, so that there were four trips necessary.

"* * * We continued the tests at Borie in an effort to determine if it could be made valuable to the railroad company. * * *

* * * * * *

"It was concluded that the machine was not economically useable by the railroad company due to the cost of operation. The slowness by which we had to operate it represented no savings to us; further that it was not designed or equipped to perform the job which we were attempting to assign to it."

This testimony clearly shows that the railroad company acted in good faith and that the tests showed no just grounds for accepting the machine.

3. Counsel for plaintiff say that the railroad company did not give the machine a fair test, but we are unable to agree with counsel. Several tests were made in Laramie in 1951. It was found that the machine

as delivered would not do the work which plaintiff hoped it would do. The record is not clear as to just how many tests were made after 1951. According to plaintiff some tests were made in 1952 and he thought that some changes were made in the machine in 1952 or 1953(Q. 126). Then other tests were made at Borie in 1955 with the knowledge of the plaintiff. Instead of saying that not sufficient tests were made, it is somewhat surprising that the railroad company bothered to make any tests after the tests in 1951 when the machine was found not to be able to do the work intended. The only explanation for that appears to be that, as testified to by Mr. Godfrey, the railroad company was anxious to have a machine which would pick up the cinders and properly dispose of them.

■ 4. The most important contention of plaintiff is in connection with the retention of the machine and the notification as to whether or not it was workable. Counsel for plaintiff contend that since the defendant retained the machine in its possession for the period of substantially five years or more without giving notice of rejection (a point very much disputed herein), the defendant must be held to have bought the machine. Counsel for plaintiff cite us to § 41–203, W.C.S.1945 (now § 34–184, W.S.1957), which provides in part as follows:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

* * * * * *

"Rule 3. * * *.

"(2) When goods are delivered to the buyer on approval or on trial or on satisfaction, or other similar terms, the property therein passes to the buyer;

"(a) When he signifies his approval or acceptance to the seller or does any other act adopting the transaction;

"(b) If he does not signify his approval or acceptance to the seller, but retains the goods without giving notice

of rejection, then if a time has been fixed for the return of the goods, on the expiration of such time, and, if no time has been fixed, on the expiration of a reasonable time. What is a reasonable time is a question of fact."

We are further cited by counsel for plaintiff to § 41–308, W.C.S.1945 (now § 34–213, W.S.1957):

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

Counsel further cite us to 46 Am.Jur. Sales § 497 which deals with the matters mentioned in the statutory sections above set out. See further an annotation on the subject in 52 A.L.R. 589–618.

The subject before us divides into two parts: (1) Return of the machine, (2) notification that it was not wanted and was not workable. It is quite apparent under the foregoing authorities that if the railroad company did not retain possession of the machine it was not necessary for the company to give any notice of rejection. The testimony herein was that the plaintiff delivered the machine to the railroad company at the latter's shops in Laramie, Wyoming. It further appears that aside from the time that the machine was tested it remained in these shops. It is stated in 46 Am.Jur. Sales § 506 as follows:

"In a case where the contract is indefinite as to the place to which the article is to be returned if it is not approved as satisfactory by the buyer, it will be presumed that the place where the seller delivered the article to the buyer is the place for return. * *"

It is the contention of counsel for defendant that under this rule the railroad company returned the machine when it had the machine at the place where plaintiff delivered it, namely, the machine shops. The contention may not be without merit. If plaintiff was dissatisfied with leaving the machine there after the tests of 1951, all he would have needed to do was to go and get it from the place to which he had delivered it, but according to his own testimony he made no demand for it. He made no effort to get the machine so it was plaintiff's own fault that the physical possession remained in the shops of the defendant.

If, however, it be thought that the foregoing rule should not be applied under circumstances such as appear in the case at bar, let us see what else the railroad company was required to do. As already stated, the contract, according to plaintiff, was that the railroad company would "take this machine and try it and if it proved successful to them that they would agree to pay the sum of $2,750." On the face of the contract it was at an end if the machine did not prove successful and the uncontradicted evidence is that it did not prove to be so. Counsel for the defendant insist that no sale was involved in this case but that the contract in question was merely that the defendant would take the machine and try it out. There is no doubt that the contract was somewhat sui generis. It involved a new machine which had never been tried as to whether it would subserve any useful purpose of the railroad company or, for that matter, whether it would subserve any useful purpose of anyone. That fact must be taken into consideration in construing the contract or any incidents in connection therewith. Counsel for the plaintiff contend that the contract involved a sale and that the machine was delivered to the defendant on trial and that, hence, defendant must comply with the rules of law laid down in connection with a contract of that kind, namely, to give notice as to whether or not the machine proved to be successful. We do not think that it is necessary for us to decide which of the theories is correct. Assuming that plaintiff was entitled to some notice within a reasonable time that the machine was not successful, let us examine

that point. The evidence of Mr. Godfrey shows that notice of that fact was given the plaintiff almost immediately after the tests in Laramie in 1951. That is very plain. When Godfrey told plaintiff that the machine was not workable without modifications, that can mean nothing else than that the machine which was delivered to the defendant was not successful, and hence the condition of a sale, if there was a sale, was not fulfilled. It is difficult to see what further notice of the lack of success of the machine could have been given. As already indicated, if plaintiff did not then want the defendant to retain possession, there was nothing at that time, or at any time thereafter, to prevent him from taking it back. The fact that it remained in defendant's possession was plaintiff's own fault, at least as much as that of defendant. It is explained, of course, by the fact, if we may credit the testimony of Godfrey as the trial court evidently did, that plaintiff was anxious that the defendant should make whatever modifications were necessary and continue the tests to determine as to whether or not the machine could be made successful. Other tests were in fact made, some as late as the spring or early summer of 1955. Plaintiff made no objections so far as the record shows though, as he testified, he kept in contact with Cal Curtis. He expressed to Mr. Bailey in his letter his gratitude for defendant's having gone to so much trouble in connection with the machine. According to Mr. Godfrey (Q. 23), plaintiff was told soon after the last tests—in the middle of 1955—that the machine did not function and could not be used by the railroad company. Plaintiff's testimony, it is true, is in conflict with that of Mr. Godfrey. He testified that Godfrey told him that the machine was satisfactory. The conflict in this testimony was for the trial court to resolve. It did not need to accept the testimony of the plaintiff but was entitled to accept the testimony of Mr. Godfrey.

The statute as before quoted states that what is a reasonable time is a question of fact. The trial court resolved that question in favor of the defendant. This court is in no position to say that the trial court erred.

Counsel for the plaintiff have cited us to three cases as upholding their contention herein, namely, Roach v. Warren, Neeley & Co., 151 Ala. 302, 44 So. 103; Quinn v. Stout, 31 Mo. 160; Brown & Lowe Co. v. Potolski, 221 App.Div. 299, 223 N.Y.S. 71. These cases have very little bearing in the case at bar. Take, for instance, the facts in the last cited case. The machine in that case was retained for a year and four months. In the meantime it was used upon one road contract, then moved to another and used on that. In the case at bar, the railroad company did not use the machine at all. It merely made tests with it and these tests proved to be unsuccessful. The company received no benefit from the machine whatever. It made these tests at its own expense. It made the modifications at its own expense. While the amount of this expense does not appear, it probably was not small.

We think that if any corroboration is needed to show that we are not wrong in the conclusion which we have reached herein, all that is necessary to do is to read with an unprejudiced mind the letters of plaintiff heretofore set out which show that plaintiff at that time did not believe that a sale had been made.

Plaintiff, in his last letter, mentioned the fact that he wanted the machine returned in the condition in which he delivered it, but that question is not in issue herein and, furthermore, plaintiff knew when he delivered the machine for tests by the railroad company that it was subject to obsolescence and to wear and tear. So he could hardly expect to get the machine back in the same shape in which he delivered it. We need not consider the question of the statute of frauds raised by the defendant herein.

We think it clear that the judgment of the trial court should be, and it is hereby, affirmed.

Affirmed.